IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOEL VICARS, | CASE NO. 7:14CV00620 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, *ET AL.*, | By: Norman K. Moon |
| | United States District Judge |
| Defendant(s). | |

Joel Vicars, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* Vicars alleges that prison officials substantially burdened his Rastafarian religious exercise of group worship; deprived him without due process of a protected interest in group worship and vocational programs; and treated him differently than general population inmates with regard to these group activities. For reasons explained more fully in my opinion entered today in a similar case, *Peters v. Clarke*, No. 7:14CV00598, I conclude that defendants' motion for summary judgment must be granted.

I. BACKGROUND

The relevant facts are undisputed and are outlined in greater detail in the *Peters* opinion, a copy of which will be provided to the parties in this action. Virginia Department of Corrections ("VDOC") grooming policy, Operating Procedure ("OP") 864.1 (docket no. 21-1), establishes uniform personal grooming standards for offenders to facilitate the identification of offenders and to promote safety, security, and sanitation. Specifically, OP 864.1 requires male inmates to keep their hair one inch or shorter in thickness or depth and prohibits certain hair styles. The policy states: "Failure to comply [with OP 864.1 grooming standards] could pose a

security risk, health hazard, or identification difficulties. Offenders who refuse to comply, or who chronically violate offender grooming standards, will be managed as potential risks to facility order and safety." OP 864.1(IV)(G)(4). Noncompliant inmates receive a security classification of Level H and remain in segregation until they comply with the grooming requirements. OP 830.2(IV)(A)(1); OP 864.1(IV)(H).

If a Level H inmate meets certain criteria, he may be moved to the 864.1 Violators Housing Unit ("VHU"), currently located at Wallens Ridge State Prison. *See* OP 864.1(IV)(I). As set forth in local OP 864A(IV)(A), the VDOC maintains the VHU pod in order to manage safely and "distinctively" inmates who are noncompliant with the grooming standards, and to encourage grooming compliance, while also allowing such inmates participation in groups and privileges not otherwise available to them in segregation so as to improve their quality of life. It is not a general population pod, but offers activities and privileges than are available to segregation inmates. VHU residents wear distinctively colored jumpsuits and cannot be housed with or be near non-VHU residents, with the exception of the school tutor. VHU residents have access to various educational programs, such as Anger Management, Thinking for a Change, and the Department of Correctional Education ("DCE") programming. They may practice their religious beliefs in their cells or with other offenders in the pod and may meet with the chaplain. Since January 16, 2015, inmates in the VHU pod may also attend a group religious service on Fridays conducted in the DCE area of the prison.

Vicars is a Virgin Islands prisoner, who has been in the custody of the Virginia Department of Corrections ("VDOC") at Wallens Ridge State Prison since June 2011, pursuant to a contract between the VDOC and its Virgin Islands counterpart. When he first arrived at Wallens Ridge, officials advised him that his hair was not in compliance with the inmate

2

grooming requirements of VDOC Operating Procedure ("OP") 864.1. Based on his Rastafarian religious beliefs,[1] Vicars refused to cut his hair, so officials placed him in a segregation unit, where he could not participate in group activities with other inmates. On April 19, 2012, Vicars was moved to a VHU pod with other inmates not in compliance with OP 864.1. Here, Vicars still did not have access to group activities with inmates outside his pod.

In 2013, the VDOC issued a formal policy establishing VHU policies, and the unit was moved to a different building. Vicars has been in this VHU pod since February 11, 2013. In April 2014, Vicars first filed informal complaints about his lack of access to vocational programs as a VHU inmate and about being unable to participate in group religious services available to other Virgin Island inmates housed in the general population inmates.[2] In response, officers advised Vicars that he could hold group religious meetings in the VHU[3] and could participate in educational programs like other VHU inmates.[4] Defendants' evidence is that as of February 25, 2015, Vicars had not yet attended the separate Rastafarian group services provided for VHU inmates.

---

[1] Vicars does not offer any specific information about his Rastafarian beliefs. Information online indicates: "Rastafari is an Abrahamic new religious movement that accepts Haile Selassie I, the Ethiopian emperor from 1930 to 1974 as God incarnate and the Messiah who will deliver believers to the Promised Land, identified by Rastas as Ethiopia. It has its roots in black-empowerment and back-to-Africa movements." Catherine Beyer, *Rastafari*, http://altreligion.about.com/od/alternativereligionsaz/a/rastafari.htm (last visited August 14, 2015).

[2] Vicars later learned that one VHU inmate was allowed to participate in a group religious service in the kitchen area with other, general population Rastafarian inmates on one occasion: June 26, 2014.

[3] For the first time in response to defendants' motion for summary judgment, Vicars states that holding group services in the VHU was not a meaningful option, because inmates are not allowed to bring personal books or other materials into the pod, or officers will confiscate these items.

[4] Vicars' grievances about these issues were ruled untimely, because they were filed more than 30 days after his transfer to the VHU.

3

Vicars filed this § 1983 complaint in November 2014 against numerous supervisory officials at Wallens Ridge.[5] Liberally construed, Vicars' complaint alleges the following claims for relief:

1. Vicars has a liberty or property interest in being provided access to vocational programs while in prison and a liberty interest in participating in group religious services, and defendants deprived him of these interests without due process;

2. Defendants failed to allow Vicars to participate in group religious services and vocational programs because of his VHU status, while providing such programs to other general population inmates, in violation of the Equal Protection Clause.[6]

3. Defendants denied Vicars the opportunity to participate in separate Rastafarian group services because of his VHU status, in violation of his rights under the First Amendment and RLUIPA.[7]

4. Supervisory officials failed to correct the violations alleged in Claims 1 through 3.

Vicars seeks compensatory damages, as well as declaratory and injunctive relief ordering his removal from the VDOC.

Defendants responded to Vicars' complaint with a motion for summary judgment, providing additional and undisputed evidence about OP 864.1 and the VHU. Vicars has responded to their motion, and I find the matter to be ripe for disposition.[8]

---

[5] The defendants are: Harold W. Clarke, David Robinson, John Jabe, Gregory Holloway, David Zook, Rebecca Young, W. Todd Farris, Dennis Collins, Quincy Reynolds, and Brenda Ravizee.

[6] Vicars also mentions in his statement of facts that Virgin Islands inmates in other "general population" pods are allowed contact visits, but such visits are not allowed for him as a VHU inmate. He does not present this issue as a claim, and even if he did, for the reasons stated in the discussion of his other claims, treating VHU inmates differently than non-VHU inmates in this respect does not implicate equal protection principles.

[7] Vicars does not argue that OP 864.1 or other facets of the VHU operating policy violate his rights under the Constitution or RLUIPA.

[8] Vicars served requests for production on the defendants, to which they first objected and then moved for a protective order, which I will grant. Vicars offers no indication that he needs the requested discovery items to respond to the arguments on summary judgment, which are based on undisputed facts. *See* Fed. R. Civ. P. 56(d) (requiring nonmovant to show by affidavit what facts he needs to obtain through discovery to respond to a summary judgment motion).

A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

B. No Personal Involvement

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In his complaint, Vicars does not affirmatively state conduct or omissions by each of the defendants, personally, that violated his constitutional rights. *See, e.g., Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995). Similarly, no supervisory official can be held automatically liable for violations possibly committed by his or her subordinate employees; the doctrine of *respondeat superior* does not apply in § 1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, Vicars fails to state

5

facts on which he could hold any defendant liable, as a supervisor, for violations committed by subordinates.[9] On these grounds, defendants are entitled to summary judgment.

C. No § 1983 Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus*, 435 U.S. 247, 259 (1978).

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). More specifically, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life," *id.* at 252, or "will inevitably affect the duration" of his confinement. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). "[W]hen a state policy expressly and

---

[9] In his verified memorandum in response to the summary judgment motion Vicars attempts to explain several defendants' personal involvement in the alleged constitutional violations. He does not properly move to amend his complaint with this information, however. Moreover, even if he could show each defendant's actions related to his claims, defendants are, nevertheless, entitled to summary judgment as to the claims themselves.

Vicars does not describe any particular action taken by Defendants Young and Ravizee in violation of his rights. Perhaps Vicars intends to sue Ravizee for her rejection of his grievances as time barred. Merely responding to an inmate's administrative remedies does not implicate any constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that prisoners do not have a constitutional right to participate in grievance procedures); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009) (citing *Adams,* stating that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation"). Moreover, the fact that Vicars' grievances were rejected as untimely presents, as an alternative ground for dismissal of his claims, his failure to properly exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (holding that to meet exhaustion requirement of § 1997e(a), grievant must comply with all "critical procedural rules" of prison's grievance system, including filing deadlines).

unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." *Prieto*, 780 F.3d at 252.

Vicars appears to argue that he has a protected liberty or property interest under Virgin Islands law, 5 V.I. Code § 4503(c),[10] in being provided access to vocational programs while in prison,[11] and a protected interest under the First Amendment of the Constitution in participating in group religious services while in prison. I conclude, however, that even if an inmate may have some "expectations" arising under these provisions while assigned to the VDOC general population,[12] any such expectations are trumped by the VDOC grooming policy. OP 864.1 expressly provides that *any* inmate who fails to comply with the grooming policy will be housed in segregation until he complies. Vicars admits that he has not complied with the hair length requirements of OP 864.1. Thus, he cannot claim a state-created liberty interest in participating in all programs allowed to inmates in less-restrictive security classifications. *Prieto*, 780 F.3d at 252. Thus, his § 1983 due process claim regarding his inability to attend such group programs

---

[10] Section 4503(c) provides that Virgin Islands prison administrators, before transferring inmates to other states, "shall ascertain and insure the availability of educational *or* vocational programs . . . for the purpose of enabling such inmates . . . to gain marketable skills" (emphasis added).

[11] In relation to his due process claims, Vicars also references the contract by which the Virgin Islands correctional department arranged to confine him in a VDOC prison. Contract claims under state law are not independently actionable under § 1983. Because I herein conclude that defendants are entitled to summary judgment on Vicars' § 1983 claims, I decline to exercise supplemental jurisdiction over any related state law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c).

[12] The United States Supreme Court has made it clear that changes in prisoners' classifications or confinement conditions that trigger constitutional due process protections will be rare. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224, 228 (1976) ("[W]e cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause" by its own force; and whatever "expectation the prisoner may have [under state regulations to certain conditions of confinement are] too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

under his current circumstances fails on the first prong of the due process analysis.[13]  Therefore, I will grant defendants' motion for summary judgment as to Vicars' due process claims.

### D.  No Equal Protection Problem

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Courts have interpreted this clause as commanding that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  To survive summary judgment, Vicars must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Vicars' equal protection claims fail on the first facet of this analysis.  Because Vicars is not in compliance with OP 864.1 and is housed in the VHU pod, he is not similarly situated to other Virgin Islands inmates, who are in compliance with OP 864.1 and are housed in the general population at Wallens Ridge.  Because the two groups are not similarly situated, officials may lawfully treat them differently.  Moreover, this policy of segregating higher security risk inmates is rationally related to clearly established state interests in maintaining prison security.  For the stated reasons, I will grant defendants' motion for summary judgment as to Vicars' equal protection claims.

---

[13]  For reasons explained in more detail in my opinion in *Peters v. Clarke*, No. 7:14CV00598, I also find that Vicars' due process claims also fail to demonstrate that VHU policies against group activity participation posed any atypical hardship on Vicars.  Indeed, he offers no evidence that he has participated in the religious programming provided to him in the VHU or show why the VHU educational programs are insufficient to aid him in obtaining marketable skills.

8

E.  No Free Exercise or RLUIPA Claim

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). A federal statute now provides more direct protection of prisoners' religious exercise: "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (citing 42 U.S.C. § 2000cc-1(a)). A claim under the First Amendment or RLUIPA requires the inmate to prove a substantial burden on a practice "sincerely based on a religious belief." *Holt v. Hobbs*, __U.S. __, 135 S. Ct. 853, 862 (2015) (RLUIPA); *O'Lone, supra* (First Amendment). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

Vicars fails to show that VHU policies against group religious services of VHU inmates with non-VHU inmates put a substantial burden on any sincere religious belief. Vicars does not point to any tenets of the Rastafarian faith about group worship. Nor does Vicars offer any evidence that his desire to meet with other Rastafarians is for religious, rather than social purposes. Most importantly, even if Vicars could prove a religious basis for his wish for group services, he does not demonstrate that VHU policy has substantially burdened his ability to exercise that religious practice. He does not allege that he asked to participate in group worship at any time before April 2014, when he had the option to hold such services with other VHU

9

Rastafarians in the pod. Furthermore, even after out-of-pod Rastafarian services for VHU inmates became available in January 2015, Vicars did not attend for a month or more. In fact, he does not allege that he is currently participating in these services.

For the stated reasons, I conclude that Vicars has failed to show any respect in which VHU policy substantially burdened his religious exercise so as to violate his rights under the First Amendment or RLUIPA. Therefore, I will grant defendants' motion for summary judgment as to these claims.[14]

### III. CONCLUSION

For the reasons stated, I will grant defendants' motion for summary judgment. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of August, 2015.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[14] Moreover, even if Vicars could show that temporary lack of access to separate group worship services substantially burdened that aspect of his religious practice, he does not dispute defendants' argument that any claim for injunctive relief is moot. *See, e.g., Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (finding that restoration of plaintiff's visitation privileges rendered moot his request for injunctive relief to order that those privileges be restored). Moreover, Vicars has no claim for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277,___, 131 S. Ct. 1651, 1658-59 (2011); *Rendleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). For different reasons, he also has no claim for monetary damages under the First Amendment. Even before he achieved access to group worship services in the VHU pod, Vicars could practice his beliefs in other ways, by wearing his hair uncut and worshiping in his cell, and VHU policy is reasonably related to prison interests in maintaining security and limiting staffing costs and efforts. *See O'Lone*, 482 U.S. at 350-52 (applying four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987)).